UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY ROBERT HOLMES,

                    Plaintiff,            **14-cv-06516**
                                          **DECISION AND**
                                          **ORDER**

          -vs-

CAROLYN W. COLVN, Acting
Commissioner of Social Security,

                    Defendant.

---

## I.  Introduction

Plaintiff Timothy Holmes ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "SSA"), challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").

Presently before the Court is the Commissioner's motion for an order reversing her final decision and remanding the case for rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## II.  Background

On March 14, 2011, plaintiff filed applications for DIB and SSI alleging disability due to back and knee problems, post-traumatic stress disorder ("PTSD") and right shoulder injury as of September 1, 2009. Administrative Transcript ("T.") 112, 208-220, 279. Following an initial denial of his applications, a hearing was held, at plaintiff's request, on July 30, 2012 and January 22, 2013, before administrative law judge ("ALJ") Richard Guida. T. 78-111. Plaintiff testified, as did impartial vocational expert William Reed (the "VE"). By decision dated February 1, 2013, the ALJ found that plaintiff was not disabled. T. 35-51. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 14, 2014. T. 4-9. This action ensued.

The Commissioner, acknowledging that correct legal standards have not been applied in this case, has moved for an order pursuant to 42 U.S.C. § 405(g) for remand. The Court adopts and incorporates by reference herein the undisputed factual recitations contained in the moving

papers.  The record evidence will be discussed in further detail as needed.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion.

## III.    Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task

is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: (1) whether the Commissioner's findings were supported by substantial evidence in the record as a whole and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

## IV. The ALJ's Decision

Considering the case de novo and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, inter alia, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2014; (2) plaintiff had not engaged in substantial gainful activity since September 1, 2009; (3) his degenerative disc

disease, obesity, major depressive disorder, and PTSD were severe impairments; (3) his impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526, 416.920[d], 416.925, and 416.926); and (4) plaintiff has the residual functional ("RFC") capacity to perform unskilled light work with the following limitations: occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; perform only simple, routine, repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; and occasionally interact with supervisors, coworkers and the public. T.   The ALJ further found that plaintiff, a younger individual, is unable to perform any past relevant work, but considering his age, high school education, work experience, and RFC, there are a significant number of jobs in the national economy that plaintiff could perform. T. 43-50.

## V.  Discussion

The Commissioner contends that in determining plaintiff's RFC, the ALJ: (1) primarily relied on the opinion evidence assessing plaintiff's physical impairments related to an earlier work-related back injury; (2) erroneously failed to include any of plaintiff's non-exertional impairments; and (3) improperly accorded little weight to the opinion of plaintiff's treating mental health care provider, Dr. Landsman. Defendant's memorandum of law, p. 4-7. In a handwritten response, plaintiff does not raise any opposition to the request for reversal and maintains that he continues to be disabled.

In his decision, the ALJ found that the severity of plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06. He concluded that plaintiff had a mild restriction in activities of daily living, citing courses that plaintiff has taken in school and activities in which he has participated "over the past several years." T. 41. The ALJ assessed "moderate difficulties" in social functioning, relying on plaintiff's reports of spending

time with family and "the few friends he does have" and
interaction with plaintiff during his hearing. T. 42.
The ALJ noted that objective findings in the medical
records support a finding of significant problems related
to plaintiff's concentration, persistence or pace, but
found no greater than moderate limitations, stating that
plaintiff has "average if not above average intelligence
in many regards" and has "consistently been involved in
school." T. 42.  The ALJ further concluded that plaintiff
had experienced no episodes of decompensation. T. 42.

## A. The ALJ erred by failing to develop the record or properly apply the treating physician rule.

In his decision, the ALJ discounted the assessment of
plaintiff's treating psychologist, Dr. Brad Landsman, who
opined in an August 12, 2011 psychological evaluation
that, among other things, plaintiff suffered from a
severe mental disorder, PTSD with narcissistic and
paranoid features, and had a GAF, global assessment of
functioning, score of 45.[1]  The ALJ noted that a GAF score

---

[1]The GAF score is a  scale ranging from 0 for lowest functioning through
100 for highest functioning promulgated by the American Psychiatric
Association to help the clinical progress of individuals with psychological
problems.  *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5.
(E.D.N.Y. 2014).

in the 41 to 50 range was "indicative of an impairment which would produce serious symptoms such as suicidal ideation, severe obsessive rituals, frequent shoplifting or a severe impairment in social, occupational or school functioning." T. 46, n.1.   In weighing Dr. Landsman's opinion, however, the ALJ, noting that the record contained "no actual treatment records," found that the doctor's "opinions and conclusions illustrate[d] a level of impairment unsupported by any other documented evidence of record." T. 46.

In his evaluation, Dr. Landsman found that plaintiff demonstrated, among other things, a severe mental disorder, reading speed and comprehension test scores inconsistent with a college graduate, a severally limited tolerance for frustration and even moderate expectations, and a likelihood of explosive episodes caused by his underlying rage. T. 460-461.   In a December 2012 statement, Dr. Landsman noted that he had begun treating plaintiff on a monthly basis following his August 2011 evaluation. T. 476.   A psychiatric complaint form dated July 2, 2012 reveals that plaintiff was admitted to the

Cayuga Medical Center following an incident where he was found running naked outside and screaming that he had taken bath salts and acid. T. 477, 509, 517.  Prior to discharge, plaintiff denied any psychiatric history or treatment despite his ongoing treating relationship with Dr. Landsman.  He was living in a tent in the backyard of a friend at the time. T. 519.  Plaintiff was again admitted to the Cayuga Medical Center 14 days later for complaints of chest pain after accidentally ingesting a cookie containing marijuana. T. 534, 540.  A treatment note dated August 16, 2012 reveals that plaintiff told Dr. Landsman that he had not been using any recreational drugs.

In a mental residual functional capacity assessment completed by Dr. Landsman on August 15, 2012, he opined that plaintiff had: 1) moderately severe limitations in areas of understanding and memory; (2) moderately severe limitations in the ability to carry out detailed instructions which may or may not be repetitive; (3) severe limitations in his ability to complete a normal workday or workweek without interruptions from

psychologically-based symptoms; (4) moderate limitations concerning interactions with supervisors and the general public; and (5) moderate limitations in the ability to adapt to unexpected work environment changes, set realistic goals or make plans indendently, be aware of normal hazards and take necessary precautions, and travel in unfamiliar settings or take public transportation. T. 471-472.  Dr. Landsman further opined that plaintiff could never be expected to complete a normal workweek or workday without interruption and, his memory, understanding, and concentration are likely affected at least 80% of the time. T. 472.  Most work-related stressors could be expected to exacerbate plaintiff's condition. T. 472.

The record before the Court also contains Dr. Landsman's treatment records from April 2012 through February 2013, which were submitted by plaintiff to the Appeal Council upon his request for review of the ALJ's decision.  These records reveal that Dr. Landsman increased Plaintiff's sertraline dosage on two occasions. T. 595, 596.  Dr. Landsman noted that plaintiff continued

to suffer nightmares, increased anxiety, racing thoughts, stress, panic, traumatic flashbacks, and other symptoms related to his PTSD. T. 597, 598, 604.  It was further noted that plaintiff was failing out of his community college program and continuing to struggle in his personal and family relationships. T. 601. During treatment, plaintiff's condition was consistently unchanged or deteriorating. T. 595-605.

The Commissioner concedes that the ALJ violated his affirmative duty to assist the plaintiff in fully developing the record by failing to make any attempt to obtain Dr. Landsman's psychiatric treatment records.  The Commissioner further concedes that the ALJ also erred in affording Dr. Landsman's opinion little weight, an analysis which was expressly based, in part, on the lack of treatment records in the file.

First, SSA regulations require that, prior to determining that a claimant is not disabled, an ALJ "make every reasonable effort to help [the claimant] get medical reports from [his] own medical sources when [given] permission to request the reports." 20 C.F.R. §

416.912(d).  In discounting Dr. Landsman's opinion, the ALJ repeatedly referenced the lack of treatment records and found that the doctor's assessment that plaintiff's mental impairments precluded plaintiff from full-time employment "lack substance."   The Court finds that, under these circumstances, the ALJ was remiss with respect to his duty to develop the record by failing to pursue further clarification of Dr. Landsman's opinion.

It is well established that, when an adjudicator is unable to definitively determine the basis of the opinion on the case record, he or she "must 'make every reasonable effort to recontact the source for clarification of the reasons for the opinion.'" *Colon v. Astrue,* No. 03:08CV1276, 2009 WL 1289244, at *3 (D.Conn. 2009), citing SSR 96-5p (1996) and 20 C.F.R. § 404.1512(e)(1).  There is no indication in the record that the ALJ made any effort to recontact Dr. Landsman to determine the basis of the doctor's assessment, an error which is compounded by the ALJ's decision to assign Dr. Landsman's opinion little weight for lack of substance and dearth of treatment records.

The treating physician rule requires that the views and medical opinions of the treating physician be given controlling weight, if they are supported by objective medical evidence and are "not inconsistent with other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008). Moreover, the treating physician rule is particularly important in the context of mental health in light of the difficulty of diagnosing mental impairments by a single consultative examination. *Bodden v. Colvin*, No. 14-CV-08731, 2015 WL 8757129, at *9 (S.D.N.Y. 2015). Despite this added importance to the treating physician rule under the present circumstances, the Court notes that the ALJ accorded significant weight to the consultative psychiatric evaluation of Dr. Kavitha Finnity, who assessed functional limitations to a much lesser extent than Dr. Landsman. The Court concludes that, as the ALJ expressly "indicated that the absence of [Dr. Landsman's] records directly affected his ability to evaluate the treater['s] opinion[], the ALJ was required to make sure that he took adequate steps to try to obtain the missing

-13-

records before simply assigning" little weight to the doctor's opinion. *Rivera v. Colvin*, No. 11CIV7469, 2014 WL 3732317, at *31 (S.D.N.Y. 2014).

Based on the foregoing, the ALJ committed reversible error by, as acknowledged by the Commissioner, failing to adequately develop the record before assigning weight to Dr. Landsman's opinion.

**B.   Remedy**

The fourth sentence of Section 405(g) of the Act provides that the Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . ., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Courts have held that a remand pursuant to the fourth sentence of Section 405(g) is appropriate in cases where the Commissioner's decision is the product of legal error. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where . . . the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the

[Commissioner] for further development of the evidence.")
(internal quotation marks omitted).

Therefore, on the basis of this record, remand is appropriate with directions to the ALJ to re-weigh Dr. Landsman's opinion and re-evaluate plaintiff's RFC.

## V.  Conclusion

For the foregoing reasons, defendant's motion for judgment on the pleadings seeking remand (Dkt # 15) is granted.  Accordingly, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   February 25, 2015
         Rochester, New York